COMMONWEALTH *vs.* DAVID BRADFORD GILCHREST
(and five companion cases[1]).

Middlesex.    September 17, 1973. — November 12, 1973.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER,
& HENNESSEY, JJ.

*Practice, Criminal,* Continuance, Judicial discretion, Fair trial. *Constitutional Law,* Due process of law.

At the hearing of a motion in criminal cases to withdraw guilty pleas on the ground of involuntariness there was no abuse of discretion, or deprivation of the defendants of a fair and complete hearing, in the denial by the judge of a request by the defendants for a continuance to permit introduction of additional expert testimony on the effect of use of a drug by the defendants just before the hearing [276-278]; nor was partial reliance by the judge upon his own knowledge of the drug and his recollection of the defendants' in-court behavior error [278].

FIVE INDICTMENTS found and returned in the Superior Court on July 9, 1968.

Certain motions were heard by *Sullivan,* J.

The case was submitted on briefs.

*Robert V. Greco* for the defendants.

*Terence M. Troyer & Barbara A. H. Smith,* Assistant District Attorneys, for the Commonwealth.

TAURO, C.J. These are appeals pursuant to G. L. c. 278, §§ 33A-33G, from the denial of motions to withdraw guilty pleas on grounds of involuntariness. The defendants claim error in the refusal by the judge hearing the motions to grant them a continuance for the purpose of procuring an expert witness to testify to the effects of Librium, a tranquilizing

---

[1] Two of the companion cases are against David Bradford Gilchrest and three are against John Francis Moynihan.

drug which they testified to ingesting in large dosage just prior to entering guilty pleas to the charges of second degree murder, unarmed robbery, and confining for the purpose of stealing. The judge, on the basis of his own knowledge and the prior testimony of the physician at the Billerica jail who had authorized issuance of the drug, thought additional testimony, and thus the continuance, unnecessary. He also treated his recollection of the defendants' apparently normal behavior at the pleading session as corroborative evidence of the drug's minimal effects. The defendants point to certain medical literature which warns that Librium may cause confusion and is contraindicated when acts requiring mental alertness are contemplated, and argue that the judge's reliance on his own knowledge and on the Commonwealth's medical witness was not consistent with the "full and complete evidentiary hearing" that should be required in this situation. They also contend that when a judge is considering motions to withdraw allegedly drug influenced guilty pleas, it is improper for him to give weight to his recollection of the accuseds' appearance and behavior at the time they entered their pleas, since "symptoms . . . produced by narcotics will often not be apparent to a lay observer, even a judge."

In response, the Commonwealth characterizes the judge's refusal to grant a continuance, and his ultimate denial of the motions, as a proper exercise of his discretion. In support of this position, the Commonwealth highlights the following factors: (1) the case had already been continued once, and it had been four months since the defendants first filed their motions; (2) the judge had earlier heard from one expert, and the defendants did not suggest any way a second expert could add to that testimony other than to demonstrate that the effect of a drug varies from individual to individual. The judge clearly indicated that he was aware of possible variations. (3) The judge had personally observed the defendants at the time they entered their pleas.

Thus, the narrow issue before us is, Did the judge hearing the defendants' motions abuse his discretion by refusing to grant a continuance for the purpose of allowing the defend-

ants time to procure their own expert witness? In approaching this problem, we are guided by the well established view that a trial judge's decisions on matters of continuance, being committed to his discretion, are not to be disturbed on appeal unless shown to be arbitrary. *Commonwealth* v. *Smith,* 353 Mass. 442, 445 (1968). At the same time, we recognize that "[t]here are no mechanical tests for deciding when a denial of a continuance is . . . arbitrary . . . .. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.* at 445.

The sequence of events leading up to the judge's disputed ruling may be summarized as follows. In July of 1968, the Middlesex grand jury returned indictments against the defendants David B. Gilchrest and John F. Moynihan for murder in the first degree, confining for the purpose of stealing, and unarmed robbery. In October of the same year each pleaded guilty to the confining and robbery charges and to so much of the murder charge as alleged murder in the second degree, and was sentenced by the judge to serve a concurrent life term on each charge. Two months later, on December 20, both filed motions to withdraw their guilty pleas. On January 25, 1969, the Massachusetts Defenders Committee was appointed to represent the defendants, and the hearing on the motions was continued until May 1.

At the May 1 hearing, again before the same judge, the hospital steward at the jail at Billerica testified that during the weekend before the defendants pleaded guilty, each was given six ten milligram Librium capsules, dispensed singly, three times a day, on Saturday and Sunday. It was intended that the capsules be taken when received, and guards had been on hand to see that this was done, but it was "possible," in the steward's words, that the defendants had "mouthed" the capsules, only pretending to have swallowed them. The defendants' testimony was that except for two occasions when Gilchrest swallowed the capsule at the proper time, they had employed the "mouthing" technique described by the steward and thus, by weekend's end, had ac-

cumulated a considerable supply of Librium. Both testified to taking these capsules just prior to appearing in court and entering their guilty pleas, Moynihan ingesting seven and Gilchrest five (thus they maintain that they received seven capsules apiece over the weekend and not six as the Billerica steward had stated).

There is considerable conflict in the testimony concerning the effect these dosages had or might have had on the defendants. Moynihan stated that he had experienced a "tingling feeling" ("I had felt all tingles through my hair and very light on my feet") and depression ("I wanted to talk but I was just, I felt down about everything"). Gilchrest concurred, telling of a headache and a "feeling like . . . I didn't care about things." William Baranow, an inmate at the Massachusetts Correctional Institution at Walpole, where the defendants were transferred for permanent confinement on the same day as they entered their pleas, had the opportunity to observe the defendants as they were being processed in, and testified that "[t]hey both looked pale. Moynihan kind of tripped as he was undressing to take a shower and . . . said he was very dizzy, and his eyes were bloodshot," and Gilchrest complained of "a very bad headache." It was brought out on cross-examination that Baranow had helped prepare the defendants' motions to withdraw their pleas.

Dr. John J. Karbowniczak, the physician at Billerica who had authorized issuance of the Librium, painted a different picture of the drug and its probable effects. He described it as a mild relaxant, capable like all drugs of affecting people differently, but one which on the whole, even in large doses such as sixty milligrams "should calm . . . but not depress . . . that much." He emphasized that this was particularly likely when ingested by a person who was very nervous, as he imagined the defendants to have been before entering their guilty pleas. In sum, his conclusion was that a sixty milligram dosage of Librium would in most cases affect an individual only to a "minor degree," and would not impair his or her mental capacity to understand what is going on.

Dr. Karbowniczak's testimony coincided with the judge's own views on Librium and its effects. On more than one occasion the judge commented that on the basis of his knowledge and experience Librium, even in large doses, was no more than a mild relaxant.[2] Reinforcing the judge's view that Librium, even in relatively large dosages, has a minimally disturbing effect on an individual was his recollection that on the day the defendants entered their pleas, during which they were before him for over an hour and a half, they appeared to be acting quite normally.[3] This recollection would also be consistent with the view that the defendants had taken no Librium at all.

We hold that the judge did not abuse his discretion in refusing the defendants' request for a continuance. "Whether a motion for continuance should be granted lies within the sound discretion of the judge, whose action will not be disturbed unless there is a patent abuse of that discretion." *Commonwealth* v. *Bettencourt,* 361 Mass. 515, 517-518 (1972). In considering a request for a continuance, a trial judge should balance the movant's need for additional time against the possible inconvenience, increased costs, and prejudice which may be incurred by the opposing party if the motion is granted. He must also give due weight to the interest of the judicial system in avoiding delays which would not measurably contribute to the resolution of a particular con-

[2]In denying the defendants' request for a continuance the judge remarked, "I know what Librium is. I have had it mentioned in court many times and described to me many times, and I would think that it's a matter of common knowledge . . . .. There would really be no value in getting a doctor in here to explain to me that Librium is a relaxant . . . and that it is a tranquilizing drug and what the effects are. . . . [Dr. Karbowniczak] has already given an answer to [the question of what a dosage of 60 milligrams would do to a particular person]."

[3]The trial judge's position was further buttressed by the testimony of counsel who originally represented Moynihan. "Their condition was as it always was. They were normal, somewhat nervous, but there was nothing unnatural or unusual about it." Moreover, on two occasions on Saturday and Sunday preceding the Monday hearing, when there was no claim of drug influence, the defendant Moynihan indicated to counsel that he wanted to plead guilty to murder in the second degree. Counsel told him to withhold final judgment until Monday at which time, after counsel told him "what the possibilities were," Moynihan decided to plead guilty. Before accepting the plea both defendants were interrogated by the judge. They were permitted to plead guilty "to so much of the indictment as admitted to second degree murder."

troversy. Here, the defendants claim substantial prejudice in not being allowed the time necessary to procure their own expert witness. But in the circumstances of this case the defendants have not established such a need for additional expert testimony as to require reversal. Essentially, they desired to introduce testimony to the effect that a sixty milligram dosage of Librium in an individual case is capable of depressing and disorienting a person to a degree which would prevent him from entering a voluntary and intelligent plea to a criminal charge. Significantly, this expert testimony would not have been based on a physician's observations of the defendants themselves when under the influence of Librium, as they were at Billerica at the time the alleged doses were taken, but instead would have been a further general description of the range of the possible effects of Librium. But both Dr. Karbowniczak and the judge acknowledged that it was possible in an individual case for Librium to impair the ability to think clearly and act intelligently. The trial judge could reasonably have concluded that a continuance would result in a delay but not in the introduction of any significantly new evidence. Also important, but not conclusive, is the fact that the matter had earlier been delayed for over three months, and it had been four months since the defendants had filed their motions. Thus, it cannot be said that the trial judge's decision not to grant a continuance was a "patent abuse" of discretion.

We also reject the defendants' equation of a denial of a request for a continuance needed to procure a witness with a denial of the right to a fair and complete hearing. *Hayes* v. *United States,* 305 F. 2d 540, 543 (8th Cir. 1962). We agree that the defendants have the right, guaranteed by the due process clause of the Fourteenth Amendment of the United States Constitution, to a complete hearing on the question of voluntariness. See, e.g., *United States* v. *Malcolm,* 432 F. 2d 809 (2d Cir. 1970). But the right to a fair and complete hearing is not the right of an accused to introduce any evidence which he might think beneficial to him. It is for the judge, not the accused, to determine the probative value of evidence

in a particular instance and, if the judge reasonably excludes such evidence, or feels it is not significant enough to justify a continuance, he has not run afoul of the Fourteenth Amendment.

Finally, we hold that the judge did not commit error by relying partially on his own knowledge of Librium, and on his recollection of the defendants' in-court behavior on the day they entered their guilty pleas. It might very well be a different case if the judge had based his ruling solely on those factors without the benefit of expert testimony. In that situation there would be the danger that the untrained eye of the judge might be unaware of subtle yet powerful effects of certain drugs. But here, the judge's remarks and observations were consistent with the expert testimony of a physician, as well as other evidence, merely corroborative, and not unsubstantiated. Compare *Hansford* v. *United States,* 365 F. 2d 920, 924-925 (D. C. Cir. 1966). Thus they were not improper.

*Orders denying motions to withdraw*
*guilty pleas affirmed.*