Commonwealth *vs.* William F. Avery.

Plymouth. June 8, 1982. — July 13, 1982.

Present: Brown, Rose, & Greaney, JJ.

*Practice, Criminal,* Continuance, Instructions to jury. *Witness,* Child.

In the circumstances, the judge in a criminal case did not abuse his discretion in refusing to grant a continuance in order to permit the jury to be drawn from a new venire after a miscalculation of peremptory challenges had made it necessary to declare a mistrial. [138-140]

At the trial of indictments charging sexual offenses against a child the judge did not err in refusing to give special instructions concerning the credibility of a child's testimony, as requested by the defendant, where the victim's credibilty was focused upon by defense counsel during cross-examination and in argument to the jury and where the instructions as a whole permitted the jury to make a proper evaluation of the testimony of the victim and another child witness. [140-145]

Indictments found and returned in the Superior Court Department on August 13, 1980.

The cases were tried before *Garrity,* J.

*Daniel E. Callahan* for the defendant.

*Gail S. Gabriel,* Assistant District Attorney, for the Commonwealth.

Greaney, J. The defendant was convicted by a jury in the Superior Court on indictments charging rape of a child, G. L. c. 265, § 23, as appearing in St. 1974, c. 474, § 3, and the commission of an unnatural and lascivious act with a child under the age of sixteen, G. L. c. 272, § 35A. The indictments arose out of an incident which occurred on the afternoon of May 13, 1980. Thereafter, the parents of the victim, who was six years old at the time of the incident and seven years old at the time of trial, complained to the police that the defendant, age eighteen, had enticed their son into his home and there sexually assaulted him. The victim's

mother, his ten year old brother, and a police officer corroborated his testimony as fresh complaint witnesses. The defendant testified that he had seen the victim playing in the yard of the house where the defendant lived, but denied having any sexual conduct with him. On appeal, the defendant contends that the judge erred (1) in refusing to grant a continuance after a miscalculation of peremptory challenges made it necessary to declare a mistrial; and (2) in refusing to give a requested instruction concerning the credibility of a child's testimony.

1. The case was called for trial on November 7, 1980. The judge indicated to defense counsel that he was "going to get five peremptory challenges." After exhausting the peremptory challenges afforded by the judge, defense counsel asked for an additional challenge. The request was denied and a panel of fourteen jurors was then sworn. No evidence was taken on that day, a Friday. The defendant orally moved for a mistrial, however, on the ground that the offense of rape of a child is a crime punishable by imprisonment for life, and that this fact entitled him to a minimum of twelve peremptory challenges. See Mass.R.Crim.P. 20(c)(1), 378 Mass. 890-891 (1979). On the following Monday, the defendant filed a written motion for a mistrial on the ground that he had been denied his proper allotment of challenges. The motion was then allowed.[1] The defendant also moved for a continuance until December 1 in order to avoid drawing the new jurors from the same pool. Although

---

[1] The original allocation of challenges appears to have been based on the assumption by counsel, initially shared by the judge, that St. 1980, c. 459, which provides for graduated penalties for the crime of rape, made the offense charged here punishable by a maximum term of twenty years' imprisonment. On that assumption, and because two additional jurors were empanelled as alternates, the judge added one challenge to the four provided by rule 20(c)(1), apparently as a matter of discretion. After further investigation, it became clear that St. 1980, c. 459, did not change the maximum penalty provided for a conviction under G. L. c. 265, § 23, and that the defendant was entitled to the twelve challenges he had requested plus an additional peremptory challenge for each additional juror empanelled.

the prosecutor did not object, this motion was denied. The judge then advised the jurors that "we're going to do it all over again . . . because there were some technical difficulties with respect to the selection of jurors . . . last Friday." After the defendant exercised seven peremptory challenges, a second jury, which included eleven of the twelve jurors on the original panel, was accepted and sworn.

The defendant contends that the jurors may have been prejudiced against him as a result of his counsel's efforts to obtain the correct number of challenges. He argues that the only practical remedy was to allow a short continuance to permit the jury to be drawn from a new venire, and that the judge's failure to grant that relief constituted error.

The granting of a continuance rests within the sound discretion of the trial judge, and the denial of a continuance will not constitute error absent an abuse of that discretion. *Commonwealth* v. *Klangos,* 326 Mass. 690, 691 (1951). *Commonwealth* v. *Bettencourt,* 361 Mass. 515, 517-518 (1972). *Commonwealth* v. *Gilchrest,* 364 Mass. 272, 274, 276 (1973). *Commonwealth* v. *Cavanaugh,* 371 Mass. 46, 50-51 (1976). *Commonwealth* v. *Jackson,* 376 Mass. 790, 792 (1978). In ruling on such a motion, a trial judge must balance the reasons given for the delay for the moving party "against the possible inconvenience, increased costs, and prejudice which may be incurred by the opposing party if the motion is granted. He must also give due weight to the interest of the judicial system in avoiding delays which would not measurably contribute to the resolution of a particular controversy." *Commonwealth* v. *Gilchrest, supra* at 276-277. "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in . . . [the individual] case . . . ." *Commonwealth* v. *Smith,* 353 Mass. 442, 445 (1968), quoting from *Ungar* v. *Sarafite,* 376 U.S. 575, 589 (1964).

The circumstances giving rise to the mistrial here did not require the conclusion that the defendant would be denied a fair trial if the second jury panel were drawn from the same

array. See and compare *United States* v. *Phillips,* 577 F.2d 688, 689 (10th Cir. 1978). Much of the colloquy about the calculation of challenges took place at sidebar, and what was said before the jury was essentially legal argument which the average layman probably would not have understood. The judge's explanation for the mishap ("technical difficulties") was accurate, neutral and succinct, and not the sort of comment which would be expected to trigger juror bias. Despite the lack of objection by the prosecutor, the judge had an independent duty to see that the indictments were tried with reasonable dispatch, and that justice was administered in an orderly fashion. Since all the witnesses had been assembled for a major felony trial, the judge could properly have considered the inconvenience and expense which would have been caused by a postponement, and the public interest in having the case decided. After denying the motion, the judge carefully examined the jurors on the question of bias or prejudice and their responses gave no indication that the mistrial had affected their impartiality. Defense counsel exercised only seven peremptory challenges and ultimately accepted eleven of the twelve jurors from the first panel. Finally, we note that the judge instructed the jury at this time on their obligation to decide the issues solely on the basis of the evidence. The judge's decision to proceed, in these circumstances, was not a "myopic insistence upon expeditiousness," *Ungar* v. *Sarafite, supra,* particularly in view of the care which he took to safeguard the defendant's rights. We find no error in his denial of the motion for a continuance.

2. Prior to closing arguments, defense counsel requested the instruction set forth in the margin,[2] but neglected to ob-

---

[2] "A child is not disqualified as a witness merely by reason of his or her youth. There is no precise age which determines the competency of a child to testify. This depends on the capacity and intelligence of the child, his or her understanding of the difference between truth and falsehood, the child's appreciation of the duty to tell the truth, and in a general way, belief that failure to perform the obligation will result in punishment.

"Children are likely to be more susceptible than adults. Moreover, children may not have a full understanding of the serious consequences of

tain a ruling on this request prior to the charge. See Mass. R.Crim.P. 24(b), 378 Mass. 895 (1979). After the charge, defense counsel objected to the judge's failure to give the requested instruction. The defendant now argues that the judge was required to give the substance of the instruction because the credibility of the child's testimony constituted the central issue in this case.

At least one State has required an instruction similar to that requested here in criminal cases where the credibility of a child's testimony is an important issue. See *State* v. *Anderson,* 152 Conn. 196, 198 (1964). The prevailing view, however, is that a trial judge retains discretion to determine whether the jury should receive a special instruction with respect to the credibility of a young witness, and, if so, the nature of that instruction. See *State* v. *Carrillo,* 108 Ariz. 524, 525-526 (1972); *People* v. *Norred,* 110 Cal. App. 2d 492, 498, cert. denied, 344 U.S. 869 (1952); *People* v. *Cunningham,* 194 Colo. 198, 204 (1977); *Overton* v. *State,* 230 Ga. 830, 833-834 (1973); *Lewis* v. *State,* 264 Ind. 288, 297 (1976); *People* v. *Feldt,* 26 App. Div. 2d 743, 744 (1966), aff'd, 22 N.Y.2d 839 (1968), habeas corpus denied, *United*

---

(the testimony they give) (the charges they make). You should therefore consider the capacity of a child witness to distinguish truth from falsehood and to appreciate the seriousness of his testimony in evaluating that testimony.

"As in the case of all other witnesses, you are the sole judges of the credibility of the child who has testified in this case. In weighing his or her testimony you may consider not only age, but also demeanor on the stand; the manner of testifying; capacity to observe facts and capacity to recollect them; and the ability to understand the questions put to him or her and to answer those questions intelligibly; whether the child impressed you as having an accurate memory and recollection and as being a truth-telling individual; and any other facts and circumstances bearing on his or her credibility. You should give the testimony such weight as in your judgment it is fairly entitled to receive." This instruction was taken verbatim from Instruction 4.03 ("Child's Testimony") of the Model Jury Instructions for Criminal Offenses Tried in the District Court Department (rev. 1979), reprinted in 8 Mass. Law. Weekly, Feb. 25, 1980, § 2, at 6. The authors cite *Commonwealth* v. *Tatisos,* 238 Mass. 322 (1921), as authority for this instruction, although the issue in that case was not credibility but competency.

*States ex rel. Feldt* v. *Follette*, 298 F. Supp. 1298, 1301 (S.D.N.Y. 1969); *State* v. *Bolton*, 28 N.C. App. 497, 499 (1976); *Marks* v. *State*, 63 Wis. 2d 769, 780-781 (1974); *State* v. *Koch*, 64 Wyo. 175, 193-195 (1948). Several courts have expressed concern with the difficulty of fixing an age which would trigger a requirement for such an instruction. By way of example, in *State* v. *Bolton, supra,* the court inquired, somewhat rhetorically: "If the instruction were definitely required for a person nine or ten years old, would it be required for one twelve or thirteen years old? If the instruction were required for persons in the early years of life, would it be necessary to set an arbitrary age in the later years of life when a similar instruction would likewise be required?" Other courts have looked to the presence of corroboration as a factor in deciding whether a particularized instruction is necessary for the proper evaluation of the child's testimony. See e.g., *People* v. *Feldt, supra*; *State* v. *Koch, supra.*

Underlying many of the decisions, however, is the concern that an instruction which singles out the testimony of the child witness for special scrutiny may infringe upon the jury's exclusive role as arbiter of credibility. See, e.g., *Lewis* v. *State, supra*; *People* v. *Cunningham, supra.* This concern derives from general principles long recognized in our own cases which were expressed in *Commonwealth* v. *Rodriguez*, 6 Mass. App. Ct. 738, 742-743 (1978), *S.C.*, 378 Mass. 296 (1979), in this fashion: "There is nothing improper in a judge's pointing out factors to be considered by the jury in weighing the credibility of oral testimony so long as he does so fairly, gives the jury no indication of whom he believes, and clearly places the function of ultimate appraisal of the testimony on the jury. *Commonwealth* v. *Christie*, 145 Mass. 232, 233-234 (1887). *Barrette* v. *Hight*, 353 Mass. 268, 268-271 (1967). A.B.A. Standards, Trial by Jury § 4.7(b)(iv) (Approved Draft 1968). What the judge may not do is 'invade the province of the jury by undertaking to decide on the weight or effect of evidence, or by refusing to submit to their consideration any question of fact, material

to the issue which may be in dispute.' *Commonwealth* v. *Cote*, 5 Mass. App. Ct. 365, 370 (1977), and cases cited. See also *Commonwealth* v. *Ingersoll*, 145 Mass. 231, 231-232 (1887); *Commonwealth* v. *Sneed*, 376 Mass. 867, 869-870 (1978); *Commonwealth* v. *Perry*, 3 Mass. App. Ct. 308, 311 (1975)." Since considerations bearing on the need for such a charge will vary from case to case, the trial·judge is obviously in the best position to determine whether a special instruction on a child's testimony should be given. Where the judge determines that it should, the exact language of such a charge then must be left to his discretion to fit the particular circumstances of the case.[3] Cf. *Commonwealth* v. *Rodriguez*, 378 Mass. at 302 (1979); *Commonwealth* v. *Alleyne*, 10 Mass. App. Ct. 28, 30 (1980); *Commonwealth* v. *Durant*, 10 Mass. App. Ct. 768, 771-772 (1980) (decisions leaving the substance of instructions on identification testimony to the trial judge). With these principles in mind, we turn to the charge in this case, examining the impressions which it made as a whole, *Commonwealth* v. *Ramey*, 368 Mass. 109, 114 (1975); *Commonwealth* v. *Ware*, 5 Mass. App. Ct. 506, 509 (1977), *S.C.*, 375 Mass. 118 (1978), to ascertain whether it provided adequate guidance for the resolution of the credibility questions. See generally *Commonwealth* v. *Corcione*, 364 Mass. 611, 618 (1974).

Here, the judge conducted an appropriate voir dire and found the victim and his ten year old brother competent to testify. The propriety of those findings has not been chal-

---

[3] The model District Court instruction requested here is only a recommended charge. It appears to have been drawn from Instruction 17.17 ("Child Witness") set out in 1 Devitt & Blackmar, Federal Jury Practice and Instructions § 17.17, at 563 (3d ed. 1977). However, the second paragraph of the recommended District Court instruction (see note 2, *supra*) was not included in the recommended Federal instructions because "it contains comments that the judge might not want to make in a particular case." *Id.* at 333 (Supp. 1981). Moreover, Devitt and Blackmar note that the United States Court of Appeals for the Seventh Circuit "takes the position [in its pattern instructions] that the 'child witness' instruction should not be given.' *Id.* at 334.

lenged. The defendant's cross-examination of the victim was extensive and thorough, and concentrated on several areas where the jury could have found that the victim's youth rendered the accuracy of his testimony uncertain. The effect of these infirmities on the victim's credibility was forcefully argued to the jury by defense counsel. The judge's charge fully covered the presumption of innocence, and clearly and correctly stated the burden of proof. The jury were advised that "as [the] attorneys [have] indicated the issue in this case is credibility." In this context, the judge made specific reference to the testimony of the "two young children," instructing that their testimony could be disbelieved in whole or in part, and that the jury's inquiry should include the question whether the children were "lying . . . [that is] saying the truth in their minds but [stating] it [in a manner] inconsistent with reality." The jury were also told to "size [the witnesses] up," and to decide if their testimony made "sense." There were additional instructions which informed the jury, in substance, that in assessing credibility, they should take into account a witness's appearance on the stand and his opportunity to observe and to be informed about his observations. There were also unobjectionable instructions on fresh complaint. Moreover, the jury knew from the manner in which the case had been tried that they had to determine the ability of the children to give trustworthy testimony in light of all the evidence, and in light of their common experience with children of similar age, demeanor and mentality. The instructions given were brief, but a short and accurate instruction may often be more useful to a jury than a lengthy recitation of confusing legal abstractions.

Viewed in the totality, we think that the charge placed adequate emphasis on the objective factors by which the jury should determine the veracity of witnesses in general, see *People* v. *Cunningham, supra*; *Marks* v. *State, supra*, and that it made the jury aware that their principal task was to determine the credibility of the victim's testimony. While

it would have been proper to give the instruction requested by the defendant, we are satisfied that the charge as given cast sufficient light upon this point to permit the jury to make a proper evaluation of the children's testimony.

*Judgments affirmed.*