## Louise A. Higgins & another[1] vs. Delta Elevator Service Corporation.

No. 96-P-1495.

Suffolk. April 6, 1998. - October 21, 1998.

Present: Armstrong, Lenk, & Beck, JJ.

*Negligence,* Elevator, Proximate cause. *Proximate Cause. Evidence,* Expert opinion. *Practice, Civil,* Instructions to jury.

At the trial of a negligence action, the judge correctly and comprehensively instructed the jury on the evaluation of expert medical testimony, properly informing the jury of factors they might consider in evaluating the credibility of that testimony on the issue of causation. [645-649]

At the trial of a negligence action, the judge's instruction to the jury on the issue of exacerbation of the plaintiff's preexisting medical condition was substantially correct, and there was no error requiring reversal of the verdict in favor of the defendant. [649]

CIVIL ACTION commenced in the Superior Court Department on August 18, 1993.

The case was tried before *Paul A. Chernoff,* J., and a motion for a new trial was heard by him.

*Michael D. Weisman* for the plaintiffs.

*Thomas F. Healy* for the defendant.

LENK, J. Louise Higgins brought this negligence action against Delta Elevator Service Corporation claiming that her preexisting multiple sclerosis was exacerbated as a result of injuries she suffered when she tripped and fell while alighting from an elevator that did not level properly after being serviced by Delta. In a special verdict, the jury found that Delta was negligent, but that Delta's negligence was not a direct cause of an aggravation or acceleration of Higgins's multiple sclerosis.

---

[1]Louise's husband, Donald Higgins, was a coplaintiff in this action claiming loss of consortium.

On appeal, Higgins contends that the judge erred when instructing the jury as to their evaluation of certain expert medical testimony and as to the law concerning exacerbation of a preexisting condition. In its cross appeal, Delta contends that the judge erred both in refusing to exclude the testimony of Higgins's liability expert and in instructing the jury on the doctrine of res ipsa loquitur. We affirm.

*Facts.* The facts, as related at trial, are as follows. In June of 1986, Louise Higgins was diagnosed with multiple sclerosis. At that time, and for approximately six years thereafter, her symptoms were mild and intermittent, comprised primarily of heaviness in her right leg and an occasional backache. Higgins's multiple sclerosis did not limit her range of activities in any way. On May 21, 1992, Higgins tripped and fell as she was exiting from elevator no. 27 at the John Hancock Tower in Boston when the elevator misleveled, landing between one and three inches below the lobby floor. The following day, Higgins's multiple sclerosis symptoms worsened significantly and, by the time of trial, she was unable to walk without assistance and had reduced her work hours from forty hours per week to twelve hours per week.

Dr. Charles M. Poser, a neurologist at the Beth Israel Hospital who specializes in the treatment of persons with multiple sclerosis, testified that concussional trauma of the sort suffered by Higgins can cause an exacerbation of preexisting multiple sclerosis. Dr. Poser testified that when concussional trauma causes an alteration of the blood brain barrier it can disrupt the myelin sheath which, in turn, impairs the flow of nerve impulses between the brain and the rest of the body. There was testimony from the defendant's experts that Dr. Poser's conclusion as to causation is not generally accepted by other neurologists specializing in multiple sclerosis. Delta accordingly challenged the admission of Dr. Poser's opinion testimony during voir dire and attacked it through vigorous cross-examination at trial. In his final jury charge, the trial judge instructed the jury that it was Higgins's burden to prove causation by expert testimony, and to demonstrate the reliability of her expert's opinion. He instructed the jury that they "must determine whether the reasoning or methodology underlying the testimony is scientifically valid and applicable to the facts at issue" and directed them to look at

specific factors brought out in the testimony as being probative of the reliability of Higgins's expert medical opinion testimony.

After the jury verdict, in which Delta was found negligent in its maintenance or repair of elevator no. 27,[2] but was not found to have caused the exacerbation of Higgins's multiple sclerosis, Higgins filed a motion for a new trial. Higgins's motion was denied and this appeal followed.

1. *The plaintiff's appeal.*

a. *Causation instruction.* In instructing the jury on the evaluation of the medical testimony on causation, the judge listed several factors articulated in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 593-594 (1993), to be considered in assessing the evidence.[3] Higgins asserts that this instruction was a fundamental and improper invasion of the jury's exclusive province to evaluate expert witness testimony. She claims that the instruction also improperly increased her burden of proof as to the validity of her medical expert's scientific evidence by improperly focusing on, and limiting the jury's evaluation of such evidence to, certain specific factors enumerated in *Daubert.* Lastly, she contends that, by instructing the jury on the *Daubert* standard with respect to expert testimony on negligence or damages, the judge prejudicially focused the attention of the jury on the reliability of the medical experts.[4]

In *Commonwealth* v. *Lanigan,* 419 Mass. 15 (1994), the Supreme Judicial Court accepted the basic reasoning of *Daub-*

[2]Clyde Gober, an elevator expert and engineer, testified on behalf of Higgins that Delta was negligent in its maintenance and operation of elevator no. 27. The elevator had been taken out of service from May 13 through May 20 or 21, 1992, during which time Delta had replaced the hoist ropes on the elevator. Gober testified that Delta was negligent in failing to ride the elevator following the replacement of the ropes and in failing to protect the selector tape during the rope replacement operation. The tape, together with the selector, controls the leveling of the elevator.

[3]The judge instructed the jurors that in order to evaluate the medical testimony on causation, "You may consider [evidence] bearing on peer review and publication of the theory or theories, testing of the theory or theories, the level of acceptance of the theory or theories and anecdotal evidence supporting or not supporting the theory or theories . . . as persuasive on the issues of whether reliability has been established and give it what weight you feel it is fairly entitled to be given."

[4]Higgins does not, however, dispute the fact that it is her burden to establish the elements of her negligence action, including causation, see *Jean W.* v. *Commonwealth,* 414 Mass. 496, 511 (1993), nor does she challenge the judge's instruction that she must do so by expert testimony.

*ert*[5] as being consistent with its own test of demonstrated reliability. Thus, while noting that "general acceptance in the relevant scientific community will continue to be the significant, and often the only, issue," the Supreme Judicial Court accepted the idea that a proponent of relevant scientific opinion evidence could demonstrate the reliability or validity of the underlying scientific theory or process by some means other than general acceptance. *Commonwealth* v. *Lanigan*, 419 Mass. at 26.

The judge must play a "gatekeeper" role in determining whether to admit such evidence. In doing so, the judge must preliminarily assess "whether the reasoning or methodology underlying the [expert] testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Ibid.*, quoting from *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 592-593. The Court in *Daubert* described several factors bearing on this assessment: (1) whether the scientific theory or technique "can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error . . . and the existence and maintenance of standards controlling the technique's operation"; and (4) "general acceptance," *Daubert, supra* at 593-594, making clear, however, that these factors are not meant to provide a "definitive checklist or test." *Id.* at 593. See *Commonwealth* v. *Lanigan*, 419 Mass. at 26.

Here, the judge did act as gatekeeper. He determined both that the reasoning or methodology underlying Dr. Poser's

[5]In *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court modified the criteria for the admissibility of expert testimony based on scientific knowledge by replacing the *Frye* general acceptance test with a more flexible standard. See *Frye* v. *United States*, 293 F. 1013, 1014 (D.C. Cir. 1923) (in deciding whether evidence produced by scientific process or theory is admissible, court will consider whether the relevant community of scientists generally accepts the process or theory). In *Daubert, supra* at 588-589, the Court concluded that the *Frye* test had been superseded by the adoption of the Federal Rules of Evidence, particularly rule 702, which provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." The Federal rule is the same as rule 702 of the Massachusetts Proposed Rules of Evidence. *Commonwealth* v. *Lanigan*, 419 Mass. at 25. Pursuant to rule 702, a trial judge must ensure that any and all scientific testimony or evidence which is admitted is not only relevant, but also reliable.

testimony was scientifically valid and that such reasoning or methodology could properly be applied to the facts in issue; hence the evidence was admitted.[6] Higgins argues that the *Daubert* factors are for the gatekeeper's reliability determination only and that once the question of admissibility has been decided, the jury need not make that determination again based on *Daubert* factors but should instead weigh such testimony just as they would any other expert testimony admitted in evidence.

As an initial matter, in reviewing the propriety of the challenged instruction, "we read 'the charge as a whole, and [do] not . . . scrutiniz[e] bits and pieces removed from their context.' " *Commonwealth* v. *Hill*, 387 Mass. 619, 624-625 (1982) (citations omitted). We are to be concerned with the over-all impact of the charge upon the jury. *Commonwealth* v. *Little*, 384 Mass. 262, 265 (1981). Viewing the charge in this light, and recognizing that the challenged instruction arguably might have been better left unsaid, we discern no error requiring reversal. See *Commonwealth* v. *Perez*, 390 Mass. 308, 313 (1983).

Here, the judge "gave a comprehensive and correct instruction on the evaluation of expert testimony," explaining to the jury that in determining what weight to give to an expert opinion they should consider the facts or materials on which each opinion was based.[7] See *Commonwealth* v. *Rosier*, 425 Mass. 807, 817 (1997). Later, in his instruction on causation, the judge informed the jury that in evaluating the credibility of the expert medical testimony on causation, they "may consider" evidence bearing on peer review and publication of the theory, testing of the theory, the level of acceptance of the theory, and anecdotal evidence supporting or not supporting the theory. Contrary to Higgins's contention, the judge did not instruct the jury that the expert medical testimony was required to satisfy each of these listed factors.

---

[6]Ultimately, because we conclude that the challenged instruction was not reversible error, we need not and do not reach the issue of whether Dr. Poser's causation testimony was properly admitted. Compare *Vassallo* v. *Baxter Healthcare Corp.*, 428 Mass. 1, 8-15 (1998); *Rotman* v. *National R.R. Passenger Corp.*, 41 Mass. App. Ct. 317 (1996).

[7]The judge instructed the jury that "[n]o matter how good an expert witness is, that expert witness is no better — the opinion is no better than the facts on which the witness bases the opinion . . . when you are deciding or assessing the testimony . . . you must carefully scrutinize the facts on which that person's opinion rests . . . you simply disregard any opinion that's based upon facts which are not proven or facts that you find not to be true."

"There is nothing improper in a judge's pointing out factors to be considered by the jury in weighing the credibility of oral testimony so long as he does so fairly, gives the jury no indication of whom he believes, and clearly places the function of ultimate appraisal of the testimony on the jury." *Commonwealth v. Avery*, 14 Mass. App. Ct. 137, 142 (1982), quoting from *Commonwealth v. Rodriguez*, 6 Mass. App. Ct. 738, 742-743 (1978), *S.C.*, 378 Mass. 296 (1979). Compare *Shahzade v. C.J. Mabardy, Inc.*, 411 Mass. 788, 794 (1992) (error for trial judge to instruct jury that emergency room records admitted into evidence were " 'pure, unadulterated hearsay,' that hearsay is unreliable, and that emergency room records are particularly suspect"). "Once the judge makes a preliminary finding that a witness is qualified to render expert opinion, as was done here, the jury may continue to evaluate the witness's qualifications. The jury's function, vis-à-vis an expert witness, is to assess the soundness and credibility of his opinions." *Leibovich v. Antonellis*, 410 Mass. 568, 573 (1991). "It is not . . . a function of instructions about experts to declare that they are all created equal." *Grassis v. Retik*, 25 Mass. App. Ct. 595, 603 (1988). Nor is it improper for a judge to instruct the jury that they may "consider the soundness of the scientific or technical principles, the methods employed, and the results reached, as well as the soundness of the reasons underlying the expert's opinion." *Commonwealth v. Rosier*, 425 Mass. at 817. It is within the judge's discretion to decide how to instruct the jury on the evaluation of the evidence at trial. Compare *Commonwealth v. Francis*, 390 Mass. 89, 101 (1983) (in instructing the jury on their evaluation of identification testimony the judge may give the jury a checklist of relevant factors that bear on the reliability of eyewitness identification).

Finally, it is to be remembered that the trial judge's "gatekeeper" assessment of such expert medical evidence for purposes of determining its admissibility is a preliminary one. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. at 592-593. The judge's ruling "is not final on the reliability of the [expert] opinion evidence, and the opponent of that evidence may challenge its validity before the trier of fact." *Commonwealth v. Lanigan*, 419 Mass. at 26. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert, supra* at 596.

Here, the trial judge did not invade the jury's province. He did not "undertak[e] to decide on the weight or effect of evidence . . . ." *Commonwealth* v. *Avery*, 14 Mass. App. Ct. at 142-143 (citations omitted). There was no error in the instruction on the jury's assessment of the reliability of the medical expert testimony.

b. *Exacerbation instruction.* Higgins also complains that she was entitled to a so-called *Wallace* instruction regarding the alleged exacerbation of her multiple sclerosis by her fall on May 21, 1992. *Wallace* v. *Ludwig*, 292 Mass. 251, 252-253 (1935).[8] On the issue of damages, Higgins argues that the judge should have instructed the jury that a wrongdoer is responsible for the combined effects of the harmful results of his wrongful act and a preexisting disease or condition. The judge instructed the jury that if they found that negligence on the part of the defendant had aggravated or accelerated a pre-existing condition of the plaintiff, then "it's the difference at any given time between what the plaintiff's condition would have been absent the accident and what the plaintiff's condition is or was or will be because of the accident" that would determine the extent of the defendant's liability. "When a party makes a request for a specific instruction legally correct and pertinent to the issues presented by the case, it is incumbent on the judge to instruct the jury in a manner which substantially covers the particular point in question." *Varelakis* v. *Etterman*, 4 Mass. App. Ct. 841, 842 (1976). The judge's instruction on this issue was substantially correct and we discern no error requiring reversal.

2. *The defendant's cross appeal.* Having ruled in Delta's favor on the issues above, we need not address Delta's arguments on its cross appeal.

*Judgment affirmed.*

---

[8]In *Wallace,* the court held that "where an injury arising from a cause which entails liability on the defendant combines with a preëxisting or a subsequently acquired disease to bring about greater harm to the plaintiff than would have resulted from the injury alone, the defendant may be liable for all the consequences. If the injury causes or contributes to cause the development of a preëxisting disease, the person liable for the injury is liable also for the resulting aggravation. The wrongdoer may be held responsible for the harmful results of the combined effects of his wrongful act and the disease." *Wallace* v. *Ludwig*, 292 Mass. at 256.