**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Louis REID, Defendant-Appellant.**

**No. 16922.**

United States Court of Appeals
Seventh Circuit.

May 14, 1969.

Roger P. Pascal, Thomas P. Luning, Chicago, Ill., James Louis Reid, in pro. per., for appellant.

Carl W. Feickert, U. S. Atty., Jonathan J. Seagle, Asst. U. S. Atty., East St. Louis, Ill., for appellee.

Before CASTLE, Chief Judge, CUMMINGS, Circuit Judge, and HOLDER, District Judge.[1]

CUMMINGS, Circuit Judge.

Defendant, a prison inmate, was tried twice on an indictment charging him with assaulting a federal penal institution employee engaged in the performance of his official duties.[2] Self-defense was the justification offered. The first trial resulted in a hung jury, but two months later a second jury found defendant guilty. This appeal is from the three-year sentence imposed after his motion for a new trial was denied. The sentence was to run consecutively to a previous sentence being served.

According to the evidence, about 9:30 p. m. on January 27, 1967, the prison authorities of the United States Penitentiary at Marion, Illinois, were investigating an altercation that had occurred earlier that evening. Defendant was reported to have had a weapon at that time. Therefore, the guard supervisor summoned defendant to his office for questioning. The search of defendant's person disclosed no weapon, but one of the prison guards testified that he found a combination padlock with a rag attached to its hasp under the pillow in defendant's cell. As a result, defendant was ordered to the segregation unit. While he was being escorted there by two guards, defendant admittedly struck one of them, Robert Meadows, at least once on the head. Defendant and another inmate, Don E. Grimes, testified that defendant struck Meadows because he was twisting defendant's arm. On the other hand, three prison guards said that the assault was without provocation.

Three days after this incident, FBI Agents Claude Grace and James Stewart interrogated defendant. They testified that they warned him of his constitutional rights and read him the usual FBI waiver of rights form. According to their testimony, after defendant read the waiver of rights form, he signed it and then stated that he was "mad" and had assaulted Meadows without provocation. On the other hand, the defendant testified that he did not sign the waiver of rights form and that he made no statements to the FBI agents. He admitted that he had a lock in his cell, but claimed it had no rag or string attached to it. Such locks were normally issued to prisoners. According to Agent Stewart, defendant said the lock "was not a weapon and that the cloth tied to the hasp was not intended as a handle. He also said that there was no special purpose for having put this cloth on the hasp of the lock."

Defendant charges that four errors were committed that entitle him to a new trial. We have concluded that a new trial is necessary.

*Padlock Testimony*

Prior to trial, defendant moved for discovery of any weapons in the possession of the Government taken from his possession on January 27, 1967. The Government successfully opposed this motion on the ground that the requested objects were not material to the preparation of a defense. Before the start of the second trial, defense counsel objected to any reference to the padlock since he was not charged with its possession. This objection was refused as premature.

---

1. Judge Holder is sitting by designation from the United States District Court for the Southern District of Indiana.

2. The indictment was brought under Sections 111 and 1114 of the Criminal Code (18 U.S.C. §§ 111 and 1114).

After the second trial commenced and for the same reason, defendant's counsel objected on several occasions to testimony about the padlock found in his cell. These objections were overruled, and the prosecutor exhibited the padlock with a piece of cloth tied to its hasp to the Government's first witness, the supervisor of guards. He was permitted to testify that this was the padlock that was brought to his office and could have been used as a weapon. He also testified that such padlocks were issued to prisoners but not with the cloth "handle" attached to the hasp. At the close of this witness's testimony, the district court sustained defendant's objections to the admission of the padlock into evidence. However, the testimony concerning the padlock remained in evidence.

██ Defendant was tried for assaulting a correctional officer by striking him with his fist. This is apparently the reason for the Government's refusal to produce the lock before trial on the ground that such a weapon was not material to the preparation of a defense. The Government now seeks to justify its about face at trial as to the materiality of the lock by asserting that the lock was part of the *res gestae* of the crime, but even if we were to recognize that often criticized concept, the padlock was not so closely connected with the crime charged as to be admissible as part of the *res gestae*. The testimony reveals only that some altercation was under investigation and that defendant was reported to have a weapon in his possession. We do not know, and it was not the purpose of this trial to determine, whether defendant was even a participant in that altercation or whether any weapon was involved at all.

While we agree with the trial judge's ruling that the padlock was inadmissible, it was improper to permit the Government to circumvent this ruling by eliciting extensive testimony about the padlock, including an inflammatory expression of opinion about the probable use of the lock. Even had a curative instruction been given, it is unlikely that the jurors would distinguish between evidence which was identified and exhibited before them and exhibits formally admitted into evidence.

The Government offers the suggestion that it was necessary to introduce the padlock testimony in order to establish a basis in fact for the guards' authority to escort the defendant to punitive segregation. The Government's brief volunteers that "Correctional officials who subject a prisoner to punishment in defiance of prison regulations do not come within the protection of the statute, as their actions are unauthorized." Even if we were to accept this surprising invitation to prison inmates to resist with force a prison guard acting in furtherance of his orders if the inmate feels that the supervisor's finding of wrongdoing is incorrect, such was not the theory of the defense in this case. Defendant claims that he struck the guard solely in order to defend himself against unprovoked physical abuse, not because of some real or imagined grievance against the supervisor's order that he be subjected to solitary confinement for violation of prison regulations concerning the padlock.

██ We can only regard the testimony concerning the lock as highly prejudicial and without probative value.[3] Its presence could only serve to invite the jury to speculate about other bad acts which the defendant may have committed. The introduction of testimony concerning dangerous weapons found among the belongings of a person charged with a crime, no part of which depends upon the use or ownership of the weapon, has consistently been regarded as prejudicial error requiring a new trial.

---

3. Even if the padlock testimony had been relevant, under Rule 4–03 of the proposed Federal Rules of Evidence, it would not be "admissible if [as here] its probative value is substantially outweighed by the danger of unfair prejudice, * * *." Preliminary draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, 46 F.R. D. 161, 225 (1969).

Thomas v. United States, 376 F.2d 564, 567 (5th Cir. 1967); Moody v. United States, 376 F.2d 525, 532 (9th Cir. 1967); Brubaker v. United States, 183 F.2d 894, 898 (6th Cir. 1950). Only where there is independent evidence tending to relate the use of the weapon to the commission of the offense has the introduction of such evidence been permitted. United States v. Blackburn, 389 F.2d 93, 95–97 (6th Cir. 1968). We hold that this evidence was unduly prejudicial and inflammatory and that no reference to it may be permitted at the next trial.

*Denial of Credibility Instruction*

At the conference on instructions, defendant tendered the following credibility instruction No. 3:

> "The Court instructs the jury that the testimony offered by officers shall not be given any greater weight or credibility by the fact alone of their office, but that such testimony shall be weighed and considered as to credibility on the same ground and for the same reason that the testimony of all other witnesses are weighed and judged."

Even though the Government had no objections to this instruction, the district court declined to give it, stating:

> "I am going to refuse it, because I am already giving one on credibility of witnesses, which includes all witnesses, and I am not singling out a particular witness, which I would be doing here."

The court did instruct the jurors on the credibility of all witnesses, admonishing them to determine:

> "* * * whether or not [each witness] had a particular prejudice or biasness or feeling in the outcome of the case. Consider the witness's relationship to the Government or to the defendant; * * *."

However, the court thereafter singled out the defendant's credibility by instructing the jury:

> "* * * You have a perfect right and it is your duty to take into considera-

tion the fact that he is the defendant and that he is interested in the outcome of the case. * * * his interest, prejudice, biasness, result of the outcome of the case or anything else may affect his testimony."

In this case, the outcome depended upon whether the jury believed defendant's or the officers' versions of the assault. As the hung jury in the first trial indicated, the credibility issue was indeed the whole case. Therefore, it was essential for the trial judge to present evenly balanced instructions as to the possible bias of both Government and defense witnesses. The question is "whether it can fairly be said that the instruction singles out or unmistakably refers or draws attention to" the defendant. United States v. Kahn, 381 F.2d 824, 835 (7th Cir. 1967), certiorari denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661. Here the prosecutor took every opportunity to emphasize the inherent credibility of the testimony of the Government's employees.

The instruction tendered by the defendant did not advise the jury that the testimony of Government agents should be received with "caution" as in Golliher v. United States, 362 F.2d 594, 604 (8th Cir. 1966), or with "suspicion" as in Bush v. United States, 126 U.S.App.D.C. 174, 375 F.2d 602, 604–605 (1967). The courts in those cases properly rejected arguments that such special instructions singling out Government witnesses were mandatory. Nor are we asked to hold that an instruction on the defendant's interest in the outcome of the case is reversible error *per se*. See Taylor v. United States, 390 F.2d 278, 285 (8th Cir. 1968), certiorari denied, 393 U.S. 869, 89 S.Ct. 155, 21 L.Ed.2d 137. Defendant argues that under the circumstances of this case and in light of the prosecutor's repeated emphasis on official truthfulness, it was reversible error to instruct the jury on the defendant's possible "interest, prejudice, biasness" while refusing to instruct that Government witnesses are not entitled to any

special credibility by the fact of their office alone. An instruction such as that tendered by defendant was approved in Bush v. United States, 126 U.S.App.D.C. 174, 375 F.2d 602, 605, note 6 (1967). Here the general credibility instruction referred to the witness's relationship to the Government or to the defendant, but in the absence of an instruction such as that tendered by the defendant, the jury might have been led to believe by the prosecutor's final argument that relationship to the Government was an assurance of trustworthiness, while the special instruction as to the defendant's interest in the outcome served to impress upon the jury that relationship to the defendant cast doubt upon the reliability of testimony. We hold only that the instructions given, in conjunction with the refusal of defendant's instruction No. 3, presented an unbalanced picture to the jury which was, on the special facts of this case, prejudicial error.

*Impropriety of Government's Closing Argument*

■ In his closing argument, defense counsel reminded the jury that the FBI agents did not show defendant the statements he allegedly gave them at the time of the interview in the prison, apparently intending to cast doubt on the authenticity of the statements, which defendant denied ever having made. Defense counsel also complained that it was not right for Agent Stewart "to make use of a statement [the dictated FBI notes of defendant's oral admissions] and then a year later refresh his recollection from his statement without that statement being submitted to the defendant so that he can read it to himself." In response, the Assistant United States Attorney told the jury that the FBI's report of defendant's admissions was "given to the defendant prior to trial, and he knew exactly what the Government was going to say in this case."

Defendant here argues that by so doing the prosecutor introduced a fact not in evidence. The assertion of prejudice resulting from this action is unconvincing. In any event, in view of the ambiguity of defense counsel's argument, the jury could construe the prosecutor's closing remarks to be a fair response thereto. Moreover, the district court sustained defense counsel's objections to this material, and the jury was instructed to disregard it. In this setting, it was unnecessary to direct a mistrial. Keeble v. United States, 347 F.2d 951, 956 (8th Cir. 1965). However, at the retrial, both sides can be depended upon to avoid a similar incident.

*Failure to Hold Hearing on Admissibility of Defendant's Statements*

Finally, defendant urges that under Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, it was incumbent upon the trial judge to hold a hearing out of the presence of the jury and to make a preliminary determination as to the voluntariness of defendant's statements to the FBI agents. However, defendant neither requested such a hearing nor objected to the introduction of his oral admissions.[4] In United States v. Taylor, 374 F.2d 753 (7th Cir. 1967), this Court delineated certain circumstances that might require a trial judge to hold such a hearing *sua sponte*, stating (at p. 756):

"Certain alerting circumstances, such as a defendant's apparent abnormal mental or physical condition, obvious ignorance, or lack of awareness —all of which may reveal a dereliction in defense counsel's failure to object to the introduction of a confession—may, under due process standards, require a trial judge to investigate the necessity of conducting a hearing notwithstanding the absence of an objection."

■ Neither the trial judge nor we have perceived here any of the "alerting

---

4. The motion for a new trial asserted that defendant was substantially prejudiced by reason of the admission of his statements to the agents, but the motion did not claim that the district court erred in not holding a *voir dire* hearing as to the voluntariness of his statements.

circumstances" mentioned in *Taylor*. The FBI agents testified that they read defendant the waiver of rights form and that he also read it before executing it, after having been fully apprised of his constitutional rights. Cf. Townsend v. Henderson, 405 F.2d 324, 327, 328–329 (6th Cir. 1968). Unlike United States v. Nielsen, 392 F.2d 849 (7th Cir. 1968), where "an appropriate objection" was taken (392 F.2d at p. 852), this defendant may have freely waived his constitutional rights to remain silent and consult an attorney before making the damaging statements. However, the Government concedes that under Jackson v. Denno, *supra*, "the trial court could not have properly refused a request by the defendant for a hearing on the issue of whether a Fifth Amendment ground prevented the admission of his confession." This issue will therefore be left open for the district court's consideration on retrial.

Roger P. Pascal of the Chicago Bar was appointed to serve as defendant's counsel in this Court. He has conscientiously and diligently presented defendant's appeal.

Reversed and remanded.