THE STATE OF OHIO, APPELLEE, *v.* SMITH, APPELLANT.

(No. 48820 — Decided September 16, 1985.)

John T. Corrigan, prosecuting attorney, for appellee.

Marillyn Fagan Damelio and Gail Gianasi Natale, for appellant.

JACKSON, P.J. Appellant Ollie Smith appeals his conviction for the crime of grand theft.

On January 21, 1984, appellant Ollie Smith and a companion entered a Revco drug store in Cleveland. After perusing the merchandise for a few minutes, appellant moved to the rear of the store and made an offensive gesture toward the two-way mirror on the back wall. Behind the mirror, but not visible to appellant, were security guard Robert Kolley and his supervisor, Michael Watkins. Kolley and Watkins made no response to appellant's gesture. Appellant then allegedly tore the price tag from a pair of sunglasses and put on the glasses.

From behind the mirror, Kolley and Watkins watched as appellant walked to the front of the store, passed by the cash registers, and approached the door. When appellant was a few feet from the door, Kolley and Watkins left the booth behind the surveillance mirror; Watkins left the store through a rear door and circled around to the front while Kolley crossed the interior of the store and apprehended appellant as appellant was opening the door. Appellant was still wearing the sunglasses.

After questioning appellant, Kolley and Watkins turned him over to Cleveland police. Appellant was tried before a jury, which found him guilty of grand theft.[1] Two assignments of error are presented for review by this court.

I

First, appellant contends that he was deprived of due process of law because the state failed to present substantial evidence on each element of the offense. See *State* v. *Eley* (1978), 56 Ohio St. 2d 169 [10 O.O. 3d 340].

The elements of theft are set forth in R.C. 2913.02(A), which provides as follows:

"No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3) By deception;

"(4) By threat."

---

[1] The charge was enhanced because of appellant's prior convictions.

Specifically, appellant argues that no proof was offered on the element of intent ("with purpose to deprive").

Appellant suggests that he was merely trying on the glasses, with the implied consent of the store's management. However, when appellant skirted the cash registers and began to depart from the store through the front door, he exceeded the scope of the owner's implied consent.

Moreover, the state's witnesses testified regarding incriminating statements made by appellant. Security guard Kolley testified:

"A. I still asked him again, are you going to continue to deny that you took these glasses, and at one point he did confess that he took the glasses.

"Q. What exactly did he say to you which indicated to you that he admitted taking the glasses?

"A. When I found out how much money he had he said, look, I can pay for these glasses, I didn't take them. But finally he said that he took them. He asked could he pay for them and leave and I told him it wasn't up to me."

Appellant's actions in attempting to leave the store, accompanied by his statements to Kolley and Watkins, constitute substantial evidence upon which a jury could conclude, beyond a reasonable doubt, that appellant had the requisite purpose to deprive Revco of the sunglasses.[2] Appellant's first assignment of error is overruled.

## II

Appellant next asserts that the trial court twice erred in permitting the introduction of irrelevant evidence.

### A

The first prong of appellant's argument concerns testimony that appellant was in possession of a pellet gun when Kolley seized him. Appellant contends that the testimony about the pellet gun was irrelevant because appellant was not charged with any weapons violations. Furthermore, he argues that the testimony was prejudicial and confusing to the jury.[3] Prior to trial, appellant submitted a written motion *in limine* seeking to exclude any reference to the

---

[2] See *State* v. *Johnson* (1978), 56 Ohio St. 2d 35, 38 [10 O.O.3d 78] (quoting *State* v. *Huffman* [1936], 131 Ohio St. 27 [5 O.O. 325], paragraph four of the syllabus):

" 'The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court.' "

[3] This issue is governed by Evid. R. 401, 402, and 403, which provide as follows:

"Rule 401. Definition of 'Relevant Evidence'

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

"Rule 402. Relevant Evidence Generally Admissible; Irrelevant Evidence Inadmissible

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible."

"Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time

"(A) Exclusion mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

"(B) Exclusion discretionary. Although relevant, evidence may be excluded if its pro-

pellet gun; an oral hearing was requested. The trial court overruled the motion. The following exchange took place at trial between the prosecutor and Kolley during the state's case-in-chief:

"Q. When you showed the defendant the tag, what happened?

"A. He denied that he took them and at that point is when I says [sic], would you please face the wall. When he faced the wall I found —

"Mr. Henderson: Objection.

"The Court: Overruled.

"A. A CO2 pellet gun.

"Q. And what did you do with this gun?

"A. At that time I just took it out to see if it was loaded and it wasn't.

"I put him up against the wall and searched him. The bag that he was carrying had two boxes that they had just purchased the merchandise with and he had a receipt for it.

"Q. What type of merchandise was that?

"A. A CO2 pellet gun with CO2 cartridges."

The pellet gun was referred to again in the testimony of Watkins:

"Q. And during that time that you were with the defendant, can you describe for us his demeaner [sic]?

"A. At first he was belligerent, he didn't wish to give us his name or nothing, and then he became talkative when we had mentioned that he had a weapon and that he was shoplifting, and that this could be CCW along with shoplifting, which possible [sic] could make it a theft, depending on what the prosecutor decides.

"Mr. Henderson: Objection.

"The Court: Objection sustained. That is enough."

A review of the transcript shows that reference to the pellet gun was made at least fourteen times in the jury's presence. In his closing argument to the jury the prosecutor gave three reasons why such emphasis was placed on the pellet gun, although it was not involved in the alleged shoplifting episode:

"Ladies and gentlemen, I suppose Mr. Henderson doesn't like this testimony because it really doesn't make his client look like the most upstanding person in the world. But, ladies and gentlemen, the reason why the testimony was presented to you was, No. 1, because it happened. No. 2, because it was there. And No. 3, because it shows us that the defendant was not there as a casual shopper as you and I might be in a store."

The state's two and one-half page appellate brief provides no additional enlightenment regarding the relevance of the pellet gun.

Ohio case law provides little guidance in assessing the issue of prejudice inherent when evidence of an unrelated weapon is admitted at a criminal trial. The federal courts,[4] however, have held that the admission of such evidence constitutes reversible error.

In *United States* v. *Warledo* (C.A. 10, 1977), 557 F.2d 721, 725, the Tenth Circuit stated:

"The courts have quite uniformly condemned the introduction in evidence of testimony concerning dangerous weapons, even though found in the possession of a defendant, which have nothing to do with the crime charged. * * *"

The Seventh Circuit had taken the same position in *United States* v. *Reid* (C.A. 7, 1969), 410 F.2d 1223, 1226:

" * * * The introduction of testimony concerning dangerous weapons found among the belongings of a person

---

bative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

[4] The Ohio Rules of Evidence are based on the federal model.

charged with a crime, no part of which depends upon the use or ownership of the weapon, has consistently been regarded as prejudicial error requiring a new trial.* * * "

The *Reid* court explained:

"We can only regard the testimony concerning the * * * [weapon] as highly prejudicial and without probative value. Its presence could only serve to invite the jury to speculate about other bad acts which the defendant may have committed * * *." (Footnote omitted.) *Id.*

In *United States* v. *Green* (C.A. 9, 1981), 648 F.2d 587, the Ninth Circuit noted that:

" * * * '[O]rdinarily the admission into evidence of weapons, or pictures of weapons, which are not directly related to the crime, and to which proper objection is made, is prejudicial to the defendant and in many cases has been held to be reversible error.' * * * " *Id.* at 595 (quoting *United States* v. *Peltier* [C.A. 8, 1978], 585 F.2d 314, 327).

In *United States* v. *Robinson* (C.A. 2, 1977), 560 F.2d 507, 513-514, certiorari denied (1978), 435 U.S. 905, the Second Circuit explained the rationale supporting exclusion of irrelevant weapons testimony:

" * * * Evidence that a defendant had a gun in his possession at the time of arrest could in some circumstances lead a juror to conclude that the defendant should be punished for possession of the gun rather than because he was guilty of the substantive offense, 1 Wigmore on Evidence § 57 (3d ed. 1940). Absent counterbalancing probative value, evidence having a strong emotional or inflammatory impact, such as a 'bloody shirt' or 'dying accusation of poisoning,'

see *United States* v. *Leonard,* 524 F.2d 1076, 1091 (2d Cir. 1975), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976), may pose a risk of unfair prejudice because it 'tends to distract' the jury from the issues in the case and 'permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.' Advisory Committee Notes, FRE 404, quoting with approval the California Law Revision Commission. The effect in such a case might be to arouse the jury's passions to a point where they would act irrationally in reaching a verdict."

The fact that the pellet gun was not formally admitted into evidence[5] in the case at bar is not controlling. The jury heard extensive testimony about the gun, so that:

" * * * [e]ven had a curative instruction been given, it is unlikely that the jurors would distinguish between evidence which was identified and exhibited before them and exhibits formally admitted into evidence." *Reid, supra,* at 1226.

Even assuming *arguendo* that some marginal relevance can be attached to the pellet gun,[6] its probative value is far outweighed by the danger of unfair prejudice, and it must therefore be excluded. See Evid. R. 403(A).

While we recognize that the trial court is vested with considerable discretion regarding the admissibility of evidence,[7] we emphasize that that discretion is not absolute. Erroneous evidentiary rulings which affect substantial rights of a party are not immune from review and, where necessary, reversal.

---

[5] Because no chain of custody was established.

[6] Such as the assertion that the pellet gun is "part of the *res gestae* of the crime." *Reid, supra,* at 1226.

[7] See *Calderon* v. *Sharkey* (1982), 70 Ohio St. 2d 218, 223 [24 O.O.3d 322] ("[C]lose evidentiary questions are within the domain of the trial court.").

Cf. *State* v. *Lewin* (1984), 11 Ohio St. 3d 172.

### B

In the second prong of this assigned error, appellant contends that the entire testimony of Michael Watkins (the security guard supervisor) was improperly admitted because, appellant suggests, the testimony was needlessly cumulative and a waste of time. See Evid. R. 403(B).

· This argument is without merit. Watkins was one of two eyewitnesses to the alleged theft. Certainly his testimony was relevant. Furthermore, appellant acknowledges that there were numerous inconsistencies between the testimony of Kolley and of Watkins. Thus, Watkins' testimony was hardly cumulative.

### III

This court holds that it was error for the trial court to admit testimony concerning appellant's possession of a pellet gun at the time of his apprehension. The pellet gun was not involved in the indictment, nor did it play any role in the alleged shoplifting incident. It was therefore irrelevant, and therefore inadmissible. In addition, the repeated references to the pellet gun injected unfair prejudice into the proceedings. The testimony confused the issues and invited the jury to base its verdict on passion and prejudice, rather than relevant, probative evidence.

The evidence of guilt is not so overwhelming — particularly when the discrepancies between the testimony of the two eyewitnesses are considered — as to rule out a reasonable possibility that the pellet gun testimony contributed substantially to appellant's conviction. Therefore, the appellant's second assigned error is sustained. The judgment of the trial court is reversed, and the cause remanded to the trial court for a new trial.

*Judgment reversed*
*and cause remanded.*

PRYATEL and ANN MCMANAMON, JJ., concur.