The STATE of Ohio, Appellant,

v.

BERNATOWICZ, Appellee.

[Cite as *State v. Bernatowicz* (1989), 62 Ohio App.3d 132.]

Court of Appeals of Ohio,
Wood County.

No. WD–88–40.

Decided March 31, 1989.

*John P. Donahue,* special prosecutor, for appellant.

*Drew Hanna,* for appellee.

---

*Per Curiam.*

Defendant-appellee, James M. Bernatowicz, is a student at Bowling Green State University (hereinafter "BGSU"), located in the city of Bowling Green, Ohio. On December 3, 1987, appellee was indicted by the Wood County Grand Jury on four counts of unauthorized use of property in violation of R.C. 2913.04. Specifically, the indictment alleges that on four separate occasions appellee:

"[K]nowingly gain[ed] access to, attempted to gain access to, or cause[d] access to be gained to any computer, computer system, or computer network without the consent of, or beyond the scope of the express or implied consent of, the owner of the computer, computer system, or computer network or other person authorized to give consent by the owner."

The indictment alleged that defendant had unlawfully accessed computers belonging to the Kroger Company and to the General Telephone Company (hereinafter "GTE").

This cause proceeded to a jury trial on May 12, 1988. On May 18, 1988, the trial court, for reasons to be disclosed during our discussion, granted appellee's motion for a mistrial. Appellant, the state of Ohio (hereinafter "state"), then sought leave to appeal a decision of the trial court on the admissibility of certain evidence. This court granted that motion. Appellant brings two assignments of error for our consideration:

"First assignment of error

"The trial court abused its discretion by precluding the state of Ohio from introducing direct evidence of the appellee's guilt; since, the evidence was directly relevant to an element of the crime charged, and its probative value was not substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury.

"Second assignment of error

"The trial court abused its discretion by granting appellee's motion for a mistrial; since, substantial rights of the appellee were not prejudiced."

█ In its first assignment of error, appellant contends that the trial court abused its discretion in finding evidence relevant to an element of the crime charged inadmissible due to unfair prejudice to the defense. This is the sole evidentiary issue to be considered in this case. While other evidence rules related to hearsay, authenticity, and best evidence are directly related to this issue and may arise at trial, our inquiry is strictly limited to a determination of the relevance of and the prejudicial effect of the proffered testimony. See *State v. Mann* (1985), 19 Ohio St.3d 34, 38, 19 OBR 28, 31–32, 482 N.E.2d 592, 596–597.

"Relevant evidence," as defined in Evid.R. 401, is:

"[E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." See, also, *State v. Tolliver* (1984), 16 Ohio App.3d 120, 16 OBR 126, 474 N.E.2d 642.

The evidence excluded by the trial court in this case was in the form of expert testimony and was formulated in the following manner.

At trial, the prosecution presented evidence, through the testimony of Patrolman Clarence Alvord of the Bowling Green Police Department, that several items were seized, pursuant to a search warrant, from Bernatowicz's dormitory room at BGSU. Among these objects were an Atari 1040 ST computer, an Atari monitor, a Star ST 10 printer for the computer, a telephone

modem,[1] instruction manuals for the modem and computer, a floppy disk which was found in the computer itself, and two other floppy disks. The police officer testified that this evidence was secured in a room that was then sealed and marked with an evidence tag. Alvord further stated that he "ran" the program, listed as Scanner 1 BAS, contained on the floppy disk found in the computer and produced a printout of the data therein. The disk and all other evidence were then placed in the property room of the Bowling Green Police Department. Alvord personally transported this evidence to the Wood County Prosecutor's Office and into the custody of John Helm. Alvord next saw the computer, printer, etc., on the day of trial when he transferred them from the prosecutor's office to the courtroom.

Alvord, who was qualified as an expert in the field of computers, also testified as to the contents of the program inserted in the computer found in appellee's room. His testimony disclosed that the program was designed to dial, in sequence, numbers beginning with the prefix 352. Additional testimony from Robert J. Fyffe, a consultant employed in the Computer Services Department at BGSU, who compiled an outgoing call record, for completed calls only, of the telephone in Bernatowicz's dormitory room, revealed that a total of 3,531 calls were made from that room in a two-month period. Of that total number of calls, 2,303 of the numbers called were in sequence. Forty-one of those calls were to 352–1109 and ten were made to 352–0107.

Sidney Morris, manager of the Kroger supermarket in Bowling Green, testified that his business orders goods by means of hand held computers which relay the necessary information to a main computer. This witness further stated that the warehouse in Columbus, Ohio, retrieved the orders by telephone, gaining access through the use of the unlisted number 352–1109.

Edward Cleland, Supervisor of Central Office Equipment and Maintenance for GTE in Bowling Green, Ohio, gave testimony showing, *inter alia*, that his company's computer was capable of being accessed by telephone through the unlisted number 352–0107.

The state next called John Gruber, Director of Technical Computer Services at Bowling Green State University, to the witness stand. Gruber was established as an expert in the field of computers, particularly in the area of computer programming. Based on his own knowledge of computers and experience in operating computers, Gruber explained, in detail, how the seized

---

1. A modem is "a device that 'modulates' and 'demodulates' digital signals for transmission over telephone lines and other communications facilities." 14 American Jurisprudence Proof of Facts 2d (1977) 196–197, Computer Generated Evidence, Section 11. In other words, a modem is a device by which one computer can communicate with another computer.

computer, modem, printer, and monitor functioned. This witness then described the process that he used to run the program on the floppy disk found in the confiscated computer. Gruber also testified that he made two minor modifications in the program: (1) because the computer was in a different building, a different number had to be dialed to obtain an outside line, and (2) some of the telephone numbers in the program were deleted in order to minimize inconvenience to noninvolved parties.

The witness next testified that, when run, the program titled Scanner 1 BAS, contained a process by which one computer, by means of a modem, sought to communicate with other compatible computers. Gruber then attempted to state that when the telephone number 352–0107 was fed into the computer, the GTE computer was accessed. At that point, the defense objected. The trial court ruled that the witness could not testify to this occurrence because, although relevant, the evidence was prejudicial to the defendant.

Pursuant to the foregoing review of pertinent evidence, this court concludes that Gruber's excluded testimony was relevant to an essential element of the offense charged. This element is access. Under R.C. 2913.04(B), the state must prove that the accused knowingly gained access or knowingly attempted to gain access to any computer, computer system, or computer network without the consent of its owner. In turn, "access" is defined in R.C. 2913.01(T):

"to approach, instruct, communicate with, store data in, retrieve data from, or otherwise make use of any resources of a computer, computer system, or computer network."

The information which appellant endeavored to offer at trial was relevant and probative evidence tending to make more likely the fact that the computer and the computer programs seized from appellee's room were the means employed to gain unauthorized access to GTE's computer. Nonetheless, this testimony was based upon an out-of-court experiment.

While Evid.R. 702 specifically permits a scientific, technical, or specialized testimony by an expert witness in order to assist the trier-of-fact in understanding evidence or in determining a fact in issue, testimony premised upon an out-of-court experiment is subject to a standard imposed by the Supreme Court of Ohio. See *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 529 N.E.2d 1382. In that decision the court adopted and followed its holding in *St. Paul Fire & Marine Ins. Co. v. Baltimore & Ohio RR. Co.* (1935), 129 Ohio St. 401, 2 O.O. 396, 195 N.E. 861, paragraphs one and two of the syllabus, which provide:

"1. Evidence of experiments performed out of court, tending to prove or disprove a contention in issue, is admissible if there is a substantial similarity between conditions existing when the experiments are made and those existing at the time of the occurrence in dispute; dissimilarities, when not so marked as to confuse and mislead the jury, go to the weight rather than the admissibility of the evidence.

"2. The admission or rejection of evidence as to such experiments is a matter peculiarly within the discretion of the trial judge, and when such discretion has not been palpably abused reviewing courts will not interfere."

Even though it is well-settled that the determination of the admissibility of evidence is within the sound discretion of the trial court, that judgment can be reversed if it is found to be unreasonable, unconscionable, or arbitrary. *State v. Longo* (1982), 4 Ohio App.3d 136, 4 OBR 228, 446 N.E.2d 1145, paragraph three of the syllabus. The court's discretion regarding the admissibility of evidence is not limitless. *State v. Smith* (1985), 29 Ohio App.3d 9, 12, 29 OBR 9, 12–13, 502 N.E.2d 656, 660. Erroneous evidentiary rulings are susceptible to both review and reversal. *Id.* Keeping this standard in mind, we now address the central issue in the case *sub judice.*

Under the holding of *St. Paul Fire & Marine Ins. Co., supra,* an out-of-court experiment must be made under substantially similar conditions as existed at the time of the original occurrence. Any dissimilarities which would not confuse or mislead the jury go to the weight rather than the admissibility of the evidence. We have previously discussed, at length, the conditions under which Gruber conducted his experiment with the computer program and the modifications from the original occurrence made for the purpose of this experiment. Upon a review of this matter, we hold that the conditions were substantially similar and that any dissimilarities would affect the weight but not the admissibility of his testimony.

■ The court below decided that, even though the testimony of Gruber was relevant, this testimony was unfairly prejudicial to appellee; therefore, the trial court ruled the testimonial evidence inadmissible. Appellant contends, in essence, that the trial court misapplied the test for determining unfair prejudice.

Evid.R. 403(A) provides that relevant evidence is inadmissible " * * * if its probative value is substantially outweighed by the danger of unfair prejudice * * *." In reaching a decision involving admissibility under Evid.R. 403(A), a court engages in a balancing test to ascertain whether the probative value of the offered evidence outweighs its prejudicial effect. *State v. Mauer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, paragraph seven of the syllabus, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714, 86 L.Ed.2d

728, rehearing denied (1985), 473 U.S. 924, 106 S.Ct. 15, 87 L.Ed.2d 694. In order for the evidence to be termed inadmissible, its probative value must be minimal and its prejudicial effect great. *State v. Morales* (1987), 32 Ohio St.3d 252, 258, 513 N.E.2d 267, 273–274, certiorari denied (1987), 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 871, rehearing denied (1987), 485 U.S. 972, 108 S.Ct. 1252, 99 L.Ed.2d 449.

The fact that evidence is damaging or harmful to the defense is not the meaning of prejudice as set forth in the rules of evidence. *State v. Bakst* (1986), 30 Ohio App.3d 141, 144, 30 OBR 259, 262–263, 506 N.E.2d 1208, 1212–1213. It is only when the evidence will induce the jury to decide the case on an improper basis, often an emotional one, that a defendant suffers material prejudice. *United States v. Medina* (C.A.7, 1985), 755 F.2d 1269. See, generally, Giannelli, Ohio Evidence Manual (1981) 10, Section 403.04.

In the case at bar, the trial court excluded the testimony of John Gruber concerning the method used to access the GTE computer on the basis that it was "prejudicial relative to the defendant's guilt or innocence." Unless evidence pertains to a collateral matter, almost all of the evidence offered at trial is inculpatory or exculpatory. The fact that appellee's cause might be damaged by the expert's testimony does not make this evidence prejudicial. This testimonial evidence is highly probative in that it tends to make more likely the allegation that this specific computer and computer program were the means by which access was gained to the GTE computer. From all of the evidence adduced at trial, the jury could make a permissible inference that this computer program was used to violate R.C. 2913.04(B). On the other hand, we find no indication in the transcript of the proceedings showing that the introduction of this evidence would lead the jury to decide this case upon an improper basis. The proffered testimony as to the contents of this program merely provide another link in proving the issue of access. We therefore conclude that the trial court's decision was unreasonable and arbitrary. Accordingly, appellant's first assignment of error is found well-taken.

The state asserts in its second assignment of error that the trial court erred by declaring a mistrial. Mistrial was declared because the court found that appellant had attempted to introduce the expert's testimony after it had been deemed inadmissible. We have determined that this evidence is admissible. As a result, a motion for a mistrial could not be granted on this ground. Accordingly, appellant's second assignment of error is found well-taken.

On consideration whereof, this court finds that the state was prejudiced and prevented from having a fair trial and the judgment of the Wood County

Court of Common Pleas is, hereby, reversed. This cause is remanded to said court for proceedings not inconsistent with this judgment.

*Judgment reversed
and cause remanded.*

CONNORS, GLASSER and ABOOD, JJ., concur.