OPINION
Defendant-appellant, Anthony David Brown, appeals his convictions for rape[1] and abduction[2] in the Fayette County Court of Common Pleas. We affirm the convictions, the sentences, and the trial court's finding that appellant is a sexual predator.
At approximately 10:00 on the evening of June 12, 2000, fifteen-year-old P.B. and eighteen-year-old Tisha Bennett were walking through a drug store parking lot in Washington Court House, Fayette County, Ohio when appellant pulled up in his car and asked the girls if they knew of a good place to eat. They responded that there was no place in town, but suggested that appellant drive to Hillsboro or Wilmington. Appellant asked the girls if they could take him to Wilmington. They agreed. Tisha asked to drive appellant's car there, and he allowed her to do so. P.B. got into the car's passenger side back seat.
Before beginning on their way to Wilmington, the girls asked appellant to make several stops. First, they drove to their apartment complex, where they told a friend that they were going with appellant. They then stopped at a United Dairy Farmer's store, where appellant bought the girls beer and cigarettes while they remained in his car. Next, they stopped in a "Sac Sav" store parking lot, where they told a friend not to come to their home until later. Tisha then drove appellant's car west through Washington Court House on U.S. 22. Appellant suggested that they go to a bar called The Connection, but P.B. refused, telling appellant she was only fifteen years old.
As they approached Jasper Mills, appellant told Tisha that he wanted to drive. When Tisha pulled over in the Palm Harbor parking lot, she exited the driver's side door and walked around the car as appellant slid over into the driver's seat. Appellant pulled away as Tisha attempted to reenter the car on the passenger's side. Appellant began driving back towards Washington Court House while P.B. screamed at him to go back for Tisha. Appellant told P.B. that it was just a joke, but if she did not shut up, he would not return.
Appellant then ordered P.B. to come into the front seat, telling her that he would go back for Tisha if she did. P.B. again yelled at appellant and opened the car door in an attempt to jump out. Appellant sped up when she did so. He warned P.B. not to do that again, threatening to "cut" her if she did. P.B. climbed into the car's front seat. Appellant pulled the car into a gravel drive where he asked P.B. to perform oral sex. Although she refused, appellant placed her hand on his penis. Appellant then drove off again, headed toward Washington Court House. When P.B. again began to argue with appellant, he told her to shut her mouth or he would cut her.
Appellant then pulled into a parking lot and told P.B. that he was going to have sex with her. When P.B. protested, stating first that she was a virgin and next that she had a sexually transmitted disease, appellant told her that he did not care. P.B. also informed appellant that she had her period, but he again stated that he did not care. Appellant took off his own clothes while still in the front seat of the car. He then took off P.B.'s clothing.
Appellant removed P.B.'s tampon and began to have sex with her. At that point, he stopped and put his pants on, got out of the car, went into the trunk, and returned to the car with a bottle of sexual lubricant. He put the lubricant on his penis and again had sex with P.B. Appellant did not ejaculate, but instead stopped and put his pants on, then told P.B. to give him oral sex. When she refused, he again threatened to "cut" her. P.B. complied. When appellant ejaculated, P.B. spit semen onto his clothing.
Appellant then told P.B. that he was going to take her back to Washington Court House. He dropped off P.B., and she began walking. P.B. encountered a relative, who picked her up and took her to the Fayette County Sheriff's Office.
Police arrested appellant at his hotel on the morning of June 13, 2000. Appellant gave an initial statement in which he denied that either P.B. or Tisha had ever been in his car. The state charged him with rape, a first degree felony, and abduction, a third degree felony. Appellant was tried before a jury on September 13, 2000. After the jury found appellant guilty of both charges, the trial court held a hearing in which it determined that he was a sexual predator. The court then sentenced appellant to serve consecutive terms of five years for rape and two years for abduction. Appellant now appeals, raising six assignments of error for our review.
Assignment of Error No. 1:
 DEFENDANT-APPELLANT WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER U.S. CONST. AMEND. [sic] VI AND XIV AND OHIO CONST. ART. I, § 10
[sic] AS A RESULT OF TRIAL COUNSEL'S SERIOUS ERRORS OF MISFEASANCE AND NONFEASANCE OCCURRING PRIOR TO AND DURING TRIAL.
Appellant first claims that his attorney rendered ineffective assistance when he failed to file a motion to dismiss the charges on speedy trial grounds, when he failed to challenge the admission of knives and a cutting tool police found in appellant's car, and when he failed to move to strike the victim's statement that she was a virgin before appellant raped her. The state responds that appellant cannot show the necessary prejudice resulting from any of counsel's actions to warrant reversing his convictions.
When reviewing appellant's claim of ineffective assistance of counsel, this court engages in the two-pronged test enumerated in Strickland v.Washington (1984), 466 U.S. 668, 690-91, 104 S.Ct. 2052, 2066. State v.Bradley (1989), 42 Ohio St.3d 136, syllabus, certiorari denied (1990),497 U.S. 1011, 110 S.Ct. 3258. We determine: (1) whether counsel's performance fell below an objective standard of reasonable professional competence, and (2) if so, whether there is a reasonable probability that counsel's unprofessional errors prejudiced appellant so as to deprive him of a fair trial. Strickland, 466 U.S. at 690-91, 104 S.Ct. at 2066.
To show error in counsel's actions, appellant must overcome the strong presumption that licensed attorneys are competent and that the challenged action is the product of sound trial strategy and falls within the wide range of reasonable professional assistance. Strickland,466 U.S. at 690-91; 104 S.Ct. at 2066. To show resulting prejudice, appellant must establish a reasonable probability that, but for counsel's unprofessional conduct, the result of the proceedings would have been different. Id. Appellant must show that, due to his attorney's ineffectiveness, his trial was so demonstrably unfair that there is a reasonable probability that the result would have been different absent his attorney's deficient performance. Id. at 693.
We will address each of appellant's contentions that his attorney acted ineffectively in turn.
Speedy Trial
Appellant first claims that his attorney acted ineffectively because he failed to file a motion to dismiss the charges on speedy trial grounds. The motion would have been granted, appellant claims, because his trial occurred more than ninety days after his arrest. The state responds that the speedy trial clock was tolled when appellant filed a motion for bill of particulars and a discovery request such that his trial occurred within the requisite time period.
Under R.C. 2945.71(C)(2), a person against whom a felony charge is pending shall be brought to trial within two hundred seventy days after the person's arrest. If the person is held in jail in lieu of bail on the pending charge, each day shall be counted as three days. R.C.2945.71(E). Since appellant was held in jail from the time of his arrest on June 13, 2000, the state had ninety days within which to try him. Therefore, the state was required to try appellant by September 11, 2000.
Appellant remained in jail for a total of ninety-two days until his trial on September 13, 2000, two days outside the requisite time period. However, the record shows that the period in which appellant must have been tried had been extended. Under R.C. 2945.72(E), the time within which an accused must be brought to trial may be extended by any period of delay necessitated by reason of a motion, proceeding, or action made or instituted by the accused. On July 18, 2000, appellant filed a demand for a bill of particulars and a request for discovery. The state responded on July 25, 2000.
It is well-established that when a defendant files a demand for discovery or a bill of particulars, the time between the filing of the demand and the state providing discovery must be counted against the defendant. State v. Benge (Apr. 24, 2000), Butler App. No. CA99-05-095, unreported, at 3, citing State v. Keith (1998), 130 Ohio App.3d 456,459, and State v. Prather (July 10, 1995), Brown App. No. CA94-08-010, unreported. The time in which a defendant must receive a speedy trial pursuant to R.C. 2945.71(C) is tolled under R.C. 2945.72(E) until the state responds in a reasonably timely fashion. Benge, Butler App. No. CA99-05-095, unreported, at 3. The speedy trial time limit was therefore tolled by appellant's requests until the State responded to them.[3]
Thus, the time for appellant's discovery motion and request for bill of particulars, as well as the state's response to those motions, was attributable to him. The time within which appellant must have been tried was extended by seven days. Appellant's trial took place within the requisite period. Consequently, a motion to dismiss on speedy trial grounds would not have been granted had appellant's attorney made one. We cannot find that appellant was prejudiced by his attorney's failure to file a motion to dismiss that would not have succeeded. This sub-argument is overruled.
Admission of Knives
Appellant next claims that his attorney should have objected to Exhibits 8, 9, and 10, which the state introduced during his trial. Exhibit 8 consisted of a small pocket knife police discovered in appellant's car. Exhibit 9 consisted of a small "razor" or straight-edged knife discovered in the glove box of appellant's car. Exhibit 10 consisted of a Craftsman cutting tool discovered on the passenger's side floorboard. Appellant also claims that his counsel should have objected to the prosecutor's statements in opening and closing arguments that the jury could infer appellant's intent from his threat coupled with the presence of knives. The state responds that the victim's testimony that appellant threatened to "cut" her rendered the items and the prosecutor's argument relevant so that appellant can show neither error in the exhibits' admission nor prejudice from counsel's failure to object to admissible evidence.
It is true that the introduction of testimony concerning dangerous weapons found among the belongings of a person charged with a crime, nopart of which depends upon the use or ownership of the weapon, has consistently been regarded as prejudicial error requiring a new trial.State v. Smith (1985), 29 Ohio App.3d 9, 11 (emphasis added). Accordingly, where the prosecution seeks to admit a weapon found in a defendant's possession, the possession of the weapon must be related to the charge and not submitted to merely show the "character" of the defendant. See id.
Here, the weapons discovered in defendant's possession were logically connected with and relevant to the crimes charged. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence in the determination of an action more or less probable. Evid.R. 401. The issue in this case was whether P.B. consented to have sex with appellant. Appellant testified that they had sex voluntarily at P.B.'s instigation. P.B. testified that she did not consent, but submitted to sex because appellant repeatedly threatened to "cut" her if she did not comply with his demands. The fact that appellant possessed the mechanism to carry out his threat was directly relevant to a determination of P.B.'s consent.
Appellant claims, however, that even relevant evidence may be inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury. Evid.R. 402, 403(A). As we have determined, appellant's possession of the knives and cutting tool played an integral part in the rape charge, directly impacting the issue of P.B.'s consent or nonconsent to sex. Given these facts, the relevance of the weapons was not outweighed by the danger of unfair prejudice. See State v. Barker (Dec. 16, 1988), 1988 WL 134180, at *5, Lucas App. No. L-87-304, unreported.
Since appellant's possession of the knives and the cutting tool was directly relevant to the issue of P.B.'s consent to sex, any objection appellant's counsel could have made would not have resulted in the exclusion of that evidence.
As to the prosecutor's statements in opening and closing argument, we note that prosecutors are entitled to some latitude in arguing what the evidence has shown and what the jury may infer from the evidence. Statev. Tibbetts (2001), 92 Ohio St.3d 146, 169. The prosecutor's arguments constitute fair commentary on properly admitted evidence. It is unlikely that the trial court would have sustained any objection counsel could have made to the prosecutor's opening or closing argument.
Appellant has failed to show that his attorney acted ineffectively by failing to object to the prosecutor's arguments or admission of the knives into evidence. This sub-argument is overruled.
Victim's Statement of Virginity
Appellant next claims that his attorney acted ineffectively by eliciting irrelevant evidence regarding P.B.'s virginity before the rape, then failing to strike that testimony. The state responds that the statement was properly admitted so that appellant cannot show prejudice from counsel's actions.
Citing Steffen v. State (1987), 31 Ohio St.3d 111, 120, appellant contends that testimony regarding a witness's virginity is of tenuous relevance and its probative value is substantially outweighed by the danger of prejudice. Here, however, P.B. did not testify about her virginity. When counsel asked P.B. what happened after appellant turned off the car in the parking lot, she testified:
 He started telling me that he was going to have sex with me and I started arguing with him that he wasn't you know . . . and I just told him that he couldn't do that because I was a virgin and I had an STD [sexually transmitted disease] and all that[.] I just told him anything that popped into my head.
Taken in the proper context, it is clear that P.B. did not testify that she was a virgin, but only that she told appellant she was a virgin in an effort to stop the impending rape. P.B. testified to her own statements to appellant, which were directly relevant to the issue of her consent.
Under these circumstances, P.B.'s statement about her virginity was neither irrelevant nor outweighed by a danger of unfair prejudice such that counsel should have objected to it and asked that it be stricken. Appellant can show neither error nor prejudice in counsel's actions. This sub-argument is overruled.
Based upon the foregoing, the first assignment of error is overruled.
Assignment of Error No. 2:
 THE COURT OF COMMON PLEAS ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DENIED HIS MOTION FOR A JUDGMENT OF ACQUITTAL DIRECTED TO THE ABSENCE OF SUFFICIENT PROOF OF VENUE.
Appellant next contends that the trial court should have granted his motion for acquittal pursuant to Crim.R. 29 because the state failed to prove venue in Fayette County. The state responds that the victim's testimony was sufficient to show that a portion of the continuing sequence of events occurred in Fayette County so that the trial court properly denied appellant's motion for acquittal.
Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the State. Id.
Section 10, Article I of the Ohio Constitution fixes venue, or the proper place to try a criminal matter, in the county in which the offense is alleged to have been committed. Thus, venue is proper in the county where an offense, or any element thereof, was committed. State v.Headley (1983), 6 Ohio St.3d 475, 477; R.C. 2901.12(A). While venue is not a material element of any crime, it is a fact that must be proven beyond a reasonable doubt. State v. Jalowiec (2001), 91 Ohio St.3d 220,228, citing Headley, 6 Ohio St.3d at 477. Express evidence to establish venue is not necessary if, from all of the facts and circumstances in the case, it is established beyond a reasonable doubt that the crime was committed in the county and state alleged in the indictment. Id.; Statev. Gribble (1970), 24 Ohio St.2d 85, 89-90. The trial court has broad discretion to determine the facts that establish venue. State v.Shuttlesworth (1995), 104 Ohio App.3d 281, 286.
P.B. testified that she and Tisha first encountered appellant in the parking lot of a drugstore in Washington Court House, and he drove them out of town. After leaving Tisha, appellant turned the car around as they got close to Jasper Mills and headed back toward Washington Court House. P.B. also testified that the parking lot in which the rape occurred was either in "Frank" or Fayette County, but she could tell by the signs that they were still in Jasper Mills. P.B. then testified that appellant dropped her off in Washington Court House after raping her.
The trial court found sufficient evidence that the crimes had occurred in Fayette County to deny appellant's motion for acquittal. We can infer from the trial court's ruling that it took judicial notice of the fact that the towns of Washington Court House and Jasper Mills are both situated in Fayette County. Evid.R. 201. The trial court acted within its discretion in finding that the facts and circumstances established beyond a reasonable doubt that appellant committed both the rape and the abduction in Fayette County.
Since venue was properly established, the trial court properly denied appellant's Crim.R. 29 motion for acquittal. Appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 THE JUDGMENT OF CONVICTION FOR THE CRIMES OF RAPE AND ABDUCTION ENTERED AGAINST DEFENDANT-APPELLANT IN THE COURT OF COMMON PLEAS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In claiming that his convictions for rape and abduction are against the manifest weight of the evidence, appellant argues that the inconsistent and logically impossible testimony of P.B. and Tisha render their testimony unbelievable. The state counters that a reasonable person could believe the girls' version of the events, so the weight of the evidence supports the convictions.
In determining whether a criminal conviction is against the manifest weight of the evidence, this court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. When engaging in a manifest weight analysis, however, a reviewing court must keep in mind that the trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. Statev. Gibbs (1999), 134 Ohio App.3d 247, 256. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Thompkins,78 Ohio St.3d at 387.
At trial, P.B. testified and was extensively cross-examined about her version of the events. In his defense at trial, appellant testified to his version of the incident, in which he claimed consensual sex. Since the jury's determination of guilt rested largely on an assessment of P.B.'s and appellant's credibility, we have reviewed both witnesses' testimony.
P.B.'s version of the events is both logically possible and believable. Moreover, the inconsistencies between P.B.'s testimony and Tisha's testimony are at best immaterial and can be explained by simple human faults in memory. The jury chose to believe P.B.'s testimony over that of appellant and, after a full review of the record, we cannot find this credibility determination unwarranted. The jury reasonably determined that the manifest weight of the evidence pointed toward appellant's guilt. Appellant's third assignment of error is overruled.
Assignment of Error No. 4:
 THE COURT OF COMMON PLEAS ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT DENIED HIS REQUEST TO MERGE THE VERDICTS OF GUILTY OF RAPE AND ABDUCTION AS REQUIRED BY THE MULTIPLE COUNTS STATUTE AND THE DOUBLE JEOPARDY CLAUSES OF THE FEDERAL AND STATE CONSTITUTIONS AND TO ENTER A CONVICTION AND SENTENCE FOR THE OFFENSE OF RAPE ONLY.
Appellant next contends that the trial court committed error when it did not merge his conviction for abduction into his rape conviction because the distance he drove P.B. was not substantial and the court did not determine whether P.B. had suffered separate harm from each crime. The state responds that both convictions were appropriate, and not subject to merger, since appellant showed a separate animus in committing each crime.
The double jeopardy protections afforded by the federal and state Constitutions guard citizens against both successive prosecutions and cumulative punishments for the "same offense." State v. Rance (1999),85 Ohio St.3d 632, 634. Under Rance, courts must determine whether two offenses are allied offenses of similar import. Id.
In doing so, the court first assesses whether the statutory elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other" by aligning the elements of each crime in the abstract. Id. at 636. If the elements of the crimes do not correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted. Id. If the elements do correspond, the defendant may not be convicted of both under Ohio's merger statute, R.C. 2941.25, unless the court finds that the defendant committed the crimes separately or with separate animus. Id. at 638-639.
Using the appropriate framework, we first compare the elements of abduction and the elements of rape. Appellant was convicted of rape under R.C. 2907.02(A)(2), the elements of which require that sexual conduct with another person be purposely compelled by force or threat of force. Appellant was also convicted of abduction under R.C. 2905.02, which requires that a person, by force or threat, remove another from the place where the other person is found or that a person, by force or threat, restrain the liberty of another person, under circumstances that create a risk of physical harm to the victim, or place the other person in fear.
The elements of abduction and rape do not overlap. Each crime requires proof of acts not required in proving the other. The elements of rape require sexual conduct while the elements of abduction require removal. Rape and abduction are not allied offenses of similar import. See Statev. O'Hara (June 29, 2001), 2001 WL 725410, at *8, Hamilton App. Nos. C-000314, C-000318, unreported (rape and kidnapping). Since the elements of the crimes do not correspond, an individual may therefore commit one crime without also committing the other. We need not determine whether appellant committed each of the crimes with a separate animus. SeeRance, 85 Ohio St.3d at 638-39.
Accordingly, appellant's convictions for rape and abduction are permissible. The trial court properly refused to merge the offenses. Appellant's fourth assignment of error is overruled.
Assignment of Error No. 5:
 THE COURT OF COMMON PLEAS IMPOSED A SENTENCE CONTRARY TO LAW WHEN IT SENTENCED DEFENDANT-APPELLANT TO CONSECUTIVE, NON-MINIMUM TERMS OF IMPRISONMENT IN CONTRAVENTION OF THE SENATE BILL 2 SENTENCING STATUTES.
Appellant next contends that the facts in the record do not support the trial court's imposition of greater-than-minimum consecutive sentences for the crimes. The state responds that the trial court made all of the necessary findings to support the greater-than-minimum consecutive sentences, and the facts it found in doing so are supported by the record.
Under R.C. 2929.14(B), a trial court may not impose a sentence greater than the minimum term on an offender who has not previously served a prison term unless the court finds that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others. The Ohio Supreme Court has recently held that when a court imposes a prison term greater than the minimum but less than the maximum, it need not specify its underlying reasons on the record. Rather, it is sufficient that the record reflect the court engaged in the statutory analysis and found either or both of the R.C. 2929.14(B) exceptions warranted a longer sentence. State v. Edmonson (1999), 86 Ohio St.3d 324, 326. When making R.C. 2929.14(B) determinations, a trial court is guided by the "seriousness" and "recidivism" factors listed in R.C. 2929.12. State v.Mariana (Dec. 30, 1999), Butler App. No. CA98-09-202, unreported, at 14.
In its sentencing hearing, the trial court noted that there were aggravating factors in the manner in which the offense was committed, in the psychological harm suffered by P.B., and in appellant's admitted lies to police and to the court about the crime. The court also found several factors in appellant's favor, but concluded that these crimes did not constitute either the worst form of the offense or the least serious form. The trial court clearly considered several of R.C. 2929.12's "seriousness" and "recidivism" factors before imposing on appellant terms greater than the minimum sentences but less than the maximum sentences permitted by R.C. 2929.14(A).
In the written judgment entry, the trial court clearly stated pursuant to R.C. 2929.14(B) both that the shortest prison term would demean the seriousness of appellant's conduct and that it would not adequately protect the public from future crime by appellant. Our review of the record convinces us the trial court engaged in the necessary statutory process to arrive at these findings, including an examination of R.C.2929.12's factors.
The trial court also ordered appellant's sentences served consecutively with one another. While R.C. 2929.41(A) provides that multiple sentences shall generally be served concurrently, there are certain exceptions. The trial court has discretion to impose consecutive sentences if its sentencing entry makes the required statutory findings under R.C.2929.14(E)(4). If a court imposes consecutive sentences under R.C.2929.14, the court must make a finding that gives its reasons for selecting the sentence imposed. R.C. 2929.19(B)(2)(c).
As we have previously noted, the trial court found several factors warranted the imposition of greater-than-minimum sentences. The court clearly relied upon the same factors to find consecutive sentences warranted. The court's judgment entry states that consecutive sentences are necessary to protect the public from future crime or to punish the offender, that consecutive sentences are not disproportionate to the seriousness of the offender's conduct or to the danger that he poses to the public, and that the harm caused by the offenses was so great or unusual that no single prison term adequately reflects the seriousness of the conduct. The trial court's judgment entry indicates its reasons for imposing consecutive sentences and thus complies with the statutory requirements for their imposition. State v. Harbrecht (1999),135 Ohio App.3d 71, 73.
An appellate court may not disturb an imposed sentence unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law or the statute. R.C. 2953.08(G)(1). After our review of the record, we cannot say by clear and convincing evidence that the trial court's decision to impose greater than minimum consecutive prison terms for both rape and abduction is not supported by the record or is contrary to law. Appellant's fifth assignment of error is overruled.
Assignment of Error No. 6:
 THE COURT OF COMMON PLEAS ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT AND DENIED HIM HIS RIGHT TO DUE PROCESS OF LAW UNDER U.S. CONST. AMEND. V AND XIV
[sic] WHEN IT ENTERED A FINDING THAT HE IS A SEXUAL PREDATOR WITHOUT REQUIRING CLEAR AND CONVINCING PROOF THAT HE IS LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY ORIENTED OFFENSES.
Appellant finally claims that the trial court erred when it found him to be a sexual predator because the evidence elicited at the hearing, which consisted mainly of the facts of the instant crime, did not show that he was likely to commit other sexual offenses in the future. The state responds that the trial court found seven factors listed in R.C.2950.09(B)(2), and that clear and convincing evidence supports the sexual predator determination.
The trial court found that appellant was a "sexual predator." A "sexual predator" is statutorily defined as a person who has been convicted of or pled guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses. R.C.2950.01(E). R.C. 2950.09(B)(2)(a) through (j) list the factors a trial court must consider in determining whether a person is a sexual predator. The statute does not require that each factor be met in order for the trial court to find that a defendant is a sexual predator.
A trial court must find that a defendant is a sexual predator by clear and convincing evidence. R.C. 2950.09(B)(3). Clear and convincing evidence is evidence that "will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. We will find clear and convincing evidence, as a matter of law, where the record does not demonstrate that there is a sufficient conflict in the evidence presented. Id. at 479.
Among the factors a trial court must consider when determining whether an offender is a sexual predator are several of the factors the trial court used here: appellant's prior criminal record; the ages of appellant and of P.B.; and appellant's threats to P.B. The trial court also noted that appellant "attempted" to give P.B. alcohol. Even if the trial court's language regarding this factor does not strictly fall within the language of R.C. 2950.09(B)(2)(e), we note that the trial court's consideration is not limited to the factors listed in the statute. Instead, the court may consider all relevant aspects of the offender's behavior when making its sexual predator determination, including but not limited to those articulated in the statute. R.C.2950.09(B)(2)(j).
Given the evidence in the record, we find that the court had before it sufficient evidence from which to determine by clear and convincing evidence that appellant is likely to commit sexually oriented crimes in the future. Since the trial court's determination that appellant is a sexual predator is supported by clear and convincing evidence on these factors, appellant's sixth assignment of error is overruled.
YOUNG, P.J., and POWELL, J., concur.
[1] R.C. 2907.02(A)(2).
[2] R.C. 2905.02.
[3] We note that there is an exception when the defendant files a demand for discovery, the state does not timely provide such discovery, and the defendant must file a motion to compel discovery pursuant to Crim.R. 16(E)(3). Benge, Butler App. No. CA99-05-095, unreported, at 4. Once the trial court enters an order compelling discovery or granting a continuance, the resulting continuance is charged against the state if the state's delay was "willful and prejudicial to the defense." Id. at 4, citing State v. Wamsley (1991), 71 Ohio App.3d 607, 611. Unless a defendant protects his right to discovery and a speedy trial by seeking to compel discovery, he may not later complain that a discovery delay deprived him of a speedy trial. Benge, Butler App. No. CA99-05-095, unreported, at 4-5. Here, appellant did not seek to compel discovery under Crim.R. 16(E)(3). His failure to do so may be construed as acquiescence in the delay. See id.